UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PINA PANCHAL, M.D., and
SOUTH TAMPA CARDIOLOGY, LLC,

    Plaintiffs,

v.                                                                                    Case No. 8:24-cv-456-WFJ-TGW

T-MOBILE USA, INC.,

    Defendant.
_____/

## ORDER

Before the Court is Defendant T-Mobile USA, Inc.'s ("T-Mobile") Motion to Compel Arbitration and Stay Litigation (Dkt. 18). Plaintiffs Pina Panchal ("Dr. Panchal") and South Tampa Cardiology, LLC ("STC") have responded in opposition (Dkt. 30), and T-Mobile has replied (Dkt. 31). Upon careful consideration, the Court grants T-Mobile's Motion and stays this case.

## BACKGROUND

In May 2023, hackers targeted Plaintiffs through a SIM-swap attack on Dr. Panchal's work-related T-Mobile account. Dkt. 1 at 12. The subject account was "improperly transferred" through the attack to an individual who "utilized Dr. Panchal's personal identity and information to attempt to obtain fraudulent prescriptions of controlled substances . . . to transfer approximately $100,000.00

USD from Dr. Panchal's retirement account[,]" and "to obtain money via a financial services platform." *Id.* at 1–2. Plaintiffs believe that this was only possible because of T-Mobile's gross negligence and failure to act. *Id.* at 13–14.

On February 21, 2024, Plaintiffs brought a Complaint against T-Mobile. Therein, Plaintiffs assert the following causes of action: Count I—violations of the Federal Communications Act; Count II—negligence; Count III—violations of the Florida Deceptive and Unfair Trade Practices Act; Count IV—negligent hiring, retention, and supervision; Count V—negligent infliction of emotional distress; and Count VI—gross negligence. *Id.* at 15–24. Among other things, Plaintiffs request an award of punitive damages "due to the willfulness and gross negligence of [T-Mobile's] conduct." *Id.* at 24.

On April 19, 2024, prior to filing any answer or motion to dismiss, T-Mobile filed the instant Motion to Compel Arbitration and Stay Litigation. Dkt. 18 at 1. T-Mobile explains that Plaintiffs repeatedly assented to their Terms and Conditions ("T&Cs"), which contain the following mandatory arbitration provision:

> **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

Dkt 18-2 at 6; Dkt. 18 at 4–6. T-Mobile also indicates that the T&Cs provide an arbitration opt-out provision that Plaintiffs never exercised. Dkt. 18 at 3–6; Dkt. 18-2 at 7 ("**YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE EARLIER OF THE DATE YOU PURCHASED A PRODUCT OR DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE**").

On May 10, 2024, Plaintiffs filed their Response. Dkt. 30 at 1. Plaintiffs do not deny any of the foregoing. Instead, they argue that "the arbitration agreement is unconscionable and thus unenforceable." *Id.* at 4. Plaintiffs also suggest, in passing, that the allegations asserted within the Complaint are "not within the scope of disputes anticipated by the arbitration clause." *Id.* at 2.

## LEGAL STANDARD

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

3

whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

The Court considers the following factors in determining whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). "[T]he Court may consider matters outside the four corners of the complaint" in ruling on these issues. *KWEST Commc'ns, Inc. v. United Cellular Wireless Inc.*, No. 16-20242-CIV, 2016 WL 10859787, at *5 (S.D. Fla. Apr. 7, 2016), *report and recommendation adopted*, No. 16-20242-CIV, 2016 WL 10870449 (S.D. Fla. June 28, 2016). And when deciding whether the parties have agreed to arbitrate certain matters, the Court generally applies state law principles governing the formation of contracts. *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## DISCUSSION

A valid written agreement to arbitrate exists. Under Florida law, a valid contract requires "offer, acceptance, consideration," *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004), and mutual assent to the terms of the agreement, *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989). Plaintiffs do not contest that these elements are satisfied or that the T&Cs—incorporated into numerous service agreements signed by Plaintiffs—provide for binding arbitration. *See generally* Dkt. 18-1; Dkt. 18-6; Dkt. 18-7; Dkt. 18-8; Dkt. 18-9; Dkt. 18-10; Dkt. 18-11; Dkt. 18-12; Dkt. 18-13; Dkt. 18-14; Dkt. 18-15; Dkt. 18-16; Dkt. 18-17; Dkt. 18-18; Dkt. 18-19; Dkt. 18-20; Dkt. 18-21; Dkt. 18-22. The first arbitration factor is therefore conceded unless T-Mobile's arbitration provision is in fact unconscionable.

The arbitration agreement is not unconscionable. "Unconscionability has generally been recognized to include an *absence of meaningful choice* on the part of one of the parties together with contract terms which are *unreasonably favorable to the other party*." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014) (emphasis in original) (internal quotations and citation omitted). Accordingly, "when a litigant seeks to avoid enforcement of a requirement to proceed with arbitration [in Florida,] . . . the challenging party must establish that

the arbitration agreement is both procedurally and substantively unconscionable." *Id.* at 1158.

T-Mobile's arbitration agreement is not procedurally unconscionable. "To determine whether a contract is procedurally unconscionable, a court must look to the circumstances surrounding the transaction to determine whether the complaining party has a meaningful choice at the time the contract was entered." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st DCA 2003) (internal quotations and citation omitted). Here, Plaintiffs cannot claim an absence of meaningful choice concerning the T&Cs' arbitration provision—the T&Cs explicitly provided an arbitration opt-out provision on the next page. *See* Dkt. 18-2 at 7. Indeed, this was not a "take-it-or-leave-it" bargaining scenario. Plaintiffs could have simply opted out of arbitration at no costs to themselves. They decided not to do so.

T-Mobile's arbitration agreement is also not substantively unconscionable. Plaintiffs' argument to the contrary—that the arbitration agreement "deprives Plaintiffs of the chance to vindicate their state-law rights"—appears to be founded on a fundamental misunderstanding. *See* Dkt. 30 at 7–10. Nothing in the T&Cs precludes Plaintiffs from asserting claims based in Florida law at arbitration. Further, there is no "provision of the arbitration clause to lock in the waiver of all state-law claims[.]" *Id.* at 9. The Court is unsure what to make of this argument

where the T&Cs explicitly provide that "[t]his Agreement is governed by the Federal Arbitration Act, applicable federal law, and the laws of the state or jurisdiction in which your billing address in our records is located[.]" *Id.* at 10.

The final issue is whether an arbitrable issue exists.[1] To begin with, this is an issue for the arbitrator to decide. The Supreme Court has made clear that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal quotations and citations omitted). This is exactly what parties have done here. The T&Cs provide that "[t]he arbitrator will have the power to rule on their own jurisdiction including any issues concerning the existence, validity, scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration[.]" Dkt. 18-2 at 9. Moreover, "'when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.'" *WasteCare Corp. v. Harmony Enterprises, Inc.*, 822 F. App'x 892, 895 (11th Cir. 2020) (quoting *Henry Schein*, 139 S. Ct. at 529).

---

[1] Plaintiffs do not raise any waiver arguments.

Notwithstanding, Plaintiffs claims are clearly arbitrable. Plaintiffs agreed that "any and all claims or disputes, of any nature, including tort and statutory claims, in any way related to or concerning the agreement, our privacy notice, privacy or data security practices, our services, devices or products . . . will be resolved by individual binding arbitration or in small claims court." Dkt. 18-2 at 7 (cleaned up). In the instant case, Plaintiffs claims are common law tort claims, state statutory claims, and federal statutory claims that directly relate to T-Mobile's privacy and data security practices, as well T-Mobile's services. *See generally* Dkt. 1. Plaintiffs do not meaningfully contest this basic fact. Their claims are arbitrable.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) T-Mobile's Motion (Dkt. 18) is **GRANTED**.

(2) This case is stayed pending resolution of the arbitration process.

(3) The Clerk is directed to administratively close this case during the pendency of the stay.

**DONE AND ORDERED** at Tampa, Florida, on May 21, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

8